\* McDuffee *v.* The Portland & Rochester Railroad.

At common law, it is the duty of a common carrier, in the performance of
his public service of transportation, not to make or give any undue or
unreasonable preference or advantage to or in favor of any person, and
not to subject any person to any undue or unreasonable prejudice or dis-
advantage, in respect to terms, facilities, or accommodations; and such
carrier is liable for the damage caused by a violation of this duty.
This general rule of the common law is approved and confirmed by Gen.
Stats., ch. 149.
An action lies, in this State, for damage caused by an unreasonable dis-
crimination practised in Maine in violation of the law of that State on
this subject.

Case, by Daniel McDuffee against the Portland & Rochester Rail-
road, for not furnishing the plaintiff terms, facilities, and accommoda-
tions for his express business on the defendants' road, between Roches-
ter, N. H., and Portland, Me., reasonably equal to those furnished by
the defendants to the Eastern Express Company.

The defendants demurred to the declaration.

*C. K. Sanborn* and *Small,* for the defendants.

FIRST BRIEF.

The demurrer should be sustained. The defendant road being nearly
all in the State of Maine, this court has not jurisdiction to hear the
case. The writ alleges that the plaintiff did express business over the
Portland & Rochester Railroad, owned and operated in New Hamp-
shire. The intermediate stations are in the State of Maine. This
court cannot find damages, if any, in the State of Maine, but only in
New Hampshire, where the road is owned and operated as alleged.

The plaintiff, as an expressman, cannot recover in this action. The
plaintiff sets forth in his writ that, during the time in which he claims
damages, he was an expressman, and had been used and accustomed
to pursue the calling and business of an expressman, carrying mer-
chandise, freight, bundles, packages, messages, and moneys, and doing
errands and such other business as is usually done by expressmen on
said railroad from said Rochester to said Portland, and to and from
stations intermediate between said Portland and said Rochester; and
that the defendants neglected and refused to furnish to the said plain-
tiff reasonable and equal terms, facilities, and accommodations in his

---

\* Decided at the August (adjourned) term, Aug. 14, 1873.

Reporter.

said express business ; that the plaintiff is descri'.,ed in the several other counts in like or similar manner,—in all claiming damages only as an expressman. And the plaintiff further alleges that the Eastern Express Company,—a corporation engaged in the express business on said railroad, on the same route as said plaintiff,—had better terms, facilities, and accommodations than the said plaintiff, and that he paid to the defendants a larger sum per day for doing his said express business than the said Eastern Express Company paid for their said express business.

The plaintiff's action is based upon, and he claims to recover damages under, sec. 2, ch. 149 of the Gen. Stats., as an expressman. Sections 1 and 2 of said chapter must be construed together. Those sections are general in their terms, and apply to all passengers and all freight requiring rates to be posted. They do not apply to expressmen. They do not contemplate the posting of the price of bundles, packages, newspapers, messages, letters, moneys, and other articles usually expressed over a railroad, but only to passengers generally and to freight generally. They make no mention of expressmen. The plaintiff claims special rights as expressman under that statute. That statute regulating freights has no connection with regulating charges of express business.

The writ combines in one count and in one cause of action the rates for the transportation of persons and for the transportation of merchandise, packages, messages, letters, moneys, &c., while they should be separate. This action is not to recover damages for not affording the same terms and facilities for the transportation for either the persons or the freight, but for both combined, which the statute does not authorize. Secs. 1 and 2, ch. 149, Gen. Stats. The court cannot tell for what the plaintiff claims, whether for the transportation of the person, or freight. The claim is for both combined, and should be separate. This is fatal. The statute gives to the party aggrieved a right of action in case the railroad does not afford the same terms, &c., for the transportation of persons, or the freight of such party ; but it does not apply to expressmen. The writ does not set forth what the usual rates were, nor what rates were charged to the plaintiff.

If the position of the plaintiff be correct, no special contract can be made for the transportation of persons or packages, bundles, messages, letters, and moneys, without the railroad being subject to indictment and damages. Railroads that carry clergymen at half fare are liable to indictment and damages by the construction of the plaintiff.

Section 4 of chapter 149 of the General Statutes is an exception to sections 1 and 2 of the same chapter. Railroads can prevent any expressman from passing over their roads, unless on payment of full fare for himself and any other persons having charge of expresses,—that is, if, not paying the full fare, they pass with their express business only by contract with the railroad ; and the railroads are not bound to make the contracts alike for all expressmen going over their roads. One may require a large amount of car room and carry a large amount of

express matter, while another may require but a small amount of car room and carry a small amount of express matter; and the railroads certainly can have power to regulate such matters, and protect themselves. The statute does not provide what accommodations an expressman may have. There is no provision in the statute that an expressman may have equal terms, facilities, and accommodations with other expressmen, or with other persons. It is wholly by contract. Sec. 4, ch. 149, Gen. Stats. Section 3 of chapter 149 fixes a penalty by indictment, and an action of damages for offending against the provisions of section 2 of same chapter, in cases coming within the provisions of section 2. There is no penalty or damage under section 4 of said chapter.

The plaintiff should have alleged in his writ what the rates were for the transportation of an expressman in charge of expresses, and what the rates were for the transportation of the plaintiff, as an expressman in charge of expresses over their road; and also, what the rates were for the transportation of bundles, packages, newspapers, moneys, messages, letters, and such other articles as are usually expressed by persons having charge of expresses, and that the said defendants did not carry for the plaintiff according to said rates. *Manchester & Lawrence Railroad* v. *Fisk*, 33 N. H. 306. Special rates may be established, among other things, for ·" organized companies." Sec. 5, ch. 149, Gen. Stats. The Eastern Express Company is an organized company; the plaintiff alleges it is an express company. Such company may pass over the defendant road at special rates. " The conductors shall collect promptly the fares so established "—sec. 6, ch. 149,—that is, as established by section 2 of said chapter. Conductors are not required to collect fares of expressmen, conclusively showing that expressmen are not governed by section 2,—not governed by the statute applicable to passengers and freight generally, but by such contract as may be made by a railroad with any expressman.

Conductors or other officers of railroads do not violate any provision of the statute relative to fares by not collecting fares of expressmen. Sec. 7, ch. 149. Expressmen are not liable for not paying established fares—sec. 8, same chapter,—that is, the fares established by section 2 of same chapter.

If expressmen pass over the road as passengers, then the railroad would be responsible for the safe transportation of baggage, &c.—sec. 11, same chapter. It is a uniform practice of all railroads in this State to make special contracts with expressmen. It is, in fact, a regulation, and might come under the same principles adopted by the court in *Hilliard* v. *Goold*, 34 N. H. 230. The plaintiff does not deny but that he had sufficient accommodation for the transportation of himself, servants, and express bundles, packages, messages, moneys, &c., nor that the defendants ever refused to carry himself, a servant, or express bundles. The plaintiff does not allege what accommodations, if any, there were in the car used by the Eastern Express Company other or different from that used by the plaintiff. The whole chapter

goes conclusively to show that the business of an expressman with railroads is by special contract with each and every expressman, and not in any manner governed by the general statutes relating to passengers and freight.

SECOND BRIEF.

The action is case, for not furnishing the plaintiff, who is an expressman, and engaged in that business over the defendants' road from Rochester, N. H., to Portland, Maine, and intermediate stations, with the same facilities and accommodations for the transportation of himself, his agents, servants, and express matter, as they furnished to the Eastern Express Company, doing a like business on said road. There are four counts in the original writ, and one new count. The first count alleges that the defendant railroad, owned and operated in New Hampshire, was engaged in carrying passengers and merchandise, and in transacting such other business as is usually transacted by railroads, to and from said Rochester, and Portland in Maine, and intermediate stations; and that the plaintiff was, on February 1, 1872, and to date of writ, an expressman, doing express business on said road, between said points, and by law entitled to have from said road reasonable and equal terms, facilities, and accommodations for the transportation of himself, his agents, servants, merchandise, and express matter over said road; but that the defendants did not furnish such terms, facilities, and accommodations to the plaintiff, and did furnish them to the Eastern Express Company and others, at a less rate than to the plaintiff for like transportation.

The second count sets out the business of the defendant road and of the plaintiff, and the obligations of the road, and the rights of the plaintiff, the same as in the first count,—and alleges that the defendants, combining and intending to injure the plaintiff in his business, neglected and refused to permit the plaintiff to have such terms, facilities, &c., and compelled the plaintiff to occupy, for the transportation of himself, servants, &c., and merchandise, &c., a baggage car on said road, which was inconveniently encumbered with baggage of passengers and otherwise; and that during all that time said Eastern Express Company, a corporation doing like business on said road, was furnished with reasonable terms and facilities for transportation, &c., on said road, at a less price than that paid by the plaintiff.

The third count sets out the business of the defendant road and of the plaintiff the same as the first count, and alleges that the plaintiff was entitled to have reasonable terms and facilities, &c., and equal to those granted by said defendants to any party doing express business over said route; that the defendants, fraudulently, &c., pretended to the plaintiff that said Eastern Express Company were paying the defendants $6.39 per day for transportation of servants and express matter on same, and thereby induced the plaintiff to pay the same for like freights between the same points; yet said express company did not

in fact pay more than fifty cents per day,—and so the plaintiff avers that by fraudulent pretence the defendants cheated and deceived the plaintiff (amendment), and did not furnish to the plaintiff reasonable and equal terms, &c., for the transportation of himself, agents, servants, and merchandise, &c., as by the statutes of New Hampshire required.

The fourth count sets out the business of the defendants over same route, and the business of the plaintiff, as in the first count,—and alleges that the defendants were required by law to grant to the plaintiff reasonable and equal facilities, &c., for transportation of himself, &c., merchandise, &c., over said road in his said express business; but that the defendants, conspiring and confederating with said Eastern Express Company to injure the plaintiff, did knowingly make an unlawful and corrupt bargain with said Eastern Express Company, wherein the said defendants agreed to give said express company the exclusive privilege of doing express business on said railroad, &c. And, in pursuance of said fraudulent and corrupt bargain, the defendants pretended that said express company were paying the defendants $6.39 per day for transportation, &c., and by said fraudulent pretence the defendants have exacted of the plaintiff $6.39 per day for transportation, &c.; and, in further pursuance of said corrupt bargain and conspiracy, the defendants have neglected and refused to grant the plaintiff the reasonable and equal terms, &c., to which he was by law entitled, nor equal to those granted said express company; and, in further pursuance of said corrupt bargain and conspiracy, forbid the plaintiff to exercise his business of expressman over said road, though the plaintiff demanded said equal terms, &c., and was ready to pay, and offered to pay, all reasonable and equal rates and charges therefor; but this count does not allege that the plaintiff was ready or willing, or offered to pay the same terms that the Eastern Express Company did.

The new count alleges that the defendants, at said Dover, February 1, 1872, and since to the date of the writ, were a railroad, operated in the State of New Hampshire, and were legally bound to transport all persons between the same points and stations on said road, at the same fare and rates, and were legally bound by the statute of the State of New Hampshire to transport and carry like descriptions of freight between the same points and stations of and on said road, for and at the same prices and rates; and to furnish all persons with reasonable and equal terms, facilities, and accommodations for the transportation of themselves, &c., substantially according to the terms of the statute— and sets out the business of the plaintiff as in the other counts; and that the plaintiff was entitled to and needed and requested equal, &c., facilities, &c., for transportation of himself and his agents and servants, &c., and bundles, packages, messages, moneys, &c., as were furnished by the defendants to any and all other persons for like description of freight, &c., yet, though requested, the defendants did not furnish such accommodations to the plaintiff, his servants, &c., and express matter, but did furnish to the Eastern Express Company,

having a station at Rochester, and doing like business with the plaintiff over said road, greater facilities, &c., than they furnished the plaintiff.

I. This declaration is bad at common law. 1. There is no allegation in the writ that the defendants were common carriers; and not being common carriers, they had a right to select their customers. 2. If it were alleged that the defendants were common carriers, still the declaration would be bad: the point of every count in the writ is, that the defendants did not carry the plaintiff and his express matter upon the same terms that they did for the Eastern Express Company; but a railroad, as a common carrier, is not obliged to transport goods and merchandise for all persons at the same rate. *Fitchburg Railroad Co.* v. *Gage*, 12 Gray 393; *Oxlade* v. *N. E. Railway Co.*, 40 Law & Eq. 234; *Ransome* v. *E. Co. Railway Co.*, 38 L. & Eq. 231; *Baxendale* v. *Eastern C. Railway Co.*, 4 C. & B. (N. S.) 63—14 U. S. Dig. 85; *Elkins* v. *Railroad*, 23 N. H. 275; A. & A. on Corp. 123, secs. 124, 356; *Olcott* v. *Banfill*, 4 N. H. 546; Story on Bailm., secs. 508, 549, note 3; *Moses* v. *Railroad*, 24 N. H. 89–91; 2 Redf. on Railways 95, sec. 7. There is no allegation of any duty imposed upon the defendants by their charter. The only limit at common law is, that the compensation demanded shall be reasonable,—which does not imply uniformity, since a common carrier may carry for one party for less than a reasonable compensation, without subjecting himself to carry for other persons at the same rates. Authorities before cited.

The case in 57 Maine 188 goes no further than to hold that the carrier cannot make unjust and extravagant charges; and there is no allegation in the writ that the terms demanded by the defendants were *per se* unjust or unreasonable, but only so as compared with the terms and facilities afforded to the Eastern Express Company. The English cases are based upon special statutes, and can aid us but very little when they hold that the rates must be equal.

II. The declaration is bad under the statute of New Hampshire.

It is alleged that the defendant railroad is a railroad owned and operated in this State, and engaged in the carriage of passengers and merchandise to and from Rochester in the county of Strafford, N. H., to Portland in the State of Maine, and to and from the intermediate stations between said Portland and Rochester; and the case finds that said road is about fifty-two miles long, fifty miles of which is in Maine, and the remainder in this State. The court will take judicial notice of the fact, that the town of Rochester extends to the line of Maine; and there is no allegation or pretence that said railroad passes through or into any other town in New Hampshire than Rochester, nor that there is any intermediate station in this State.

This corporation exists only in contemplation of law, and by force of law; and when the law ceases to operate, the corporation can have no existence. It must dwell in the place of its creation, and cannot migrate to another sovereignty. 2 Redf. on Railroads 63. The action is based upon a statute of this State, and is against a corporation created by law in this State. Neither our statute, nor its charter

obtained here, can give to this corporation any extra territorial authority. They can have no force beyond the State line. No action, therefore, can lie under our statute for not transporting the plaintiff, &c., to Portland in the State of Maine, or to or from any station which is not in this State. The writ alleges that the defendant corporation was engaged in carrying passengers from one station to other stations named, and not from one station to any intermediate point between stations ; and there being no intermediate station in New Hampshire, between Rochester and Portland, alleged in the writ to exist, or existing in fact, there is no intermediate station to or from which, under our statute, the defendants could be compelled or required to carry the plaintiff. They could be required to carry him to the State line, but no farther ; and for that he has not sued and does not claim. The chartering of these railroad corporations, clothing them with the right to take private property for their use, and prescribing the rules which shall govern them, are acts of sovereignty which can be exercised only on the territory of the State enacting them. 2 Kent 339 ; 1 Redf. on Railways 245, 246.

But the plaintiff claims that he can couple the statutes of Maine and New Hampshire together, and so sustain his declaration. Clearly he cannot as to the last two counts, for these are expressly based upon our statute. But how do the court know there is any such statute in Maine as the plaintiff claims ? He has not stated it, nor counted upon it, nor inserted it in his writ. If he would rely upon the statute of Maine, he must plead and prove it. 1 Chitty Pl. *216 ; Gould Pl., ch. 3, sec. 16 ; Stephen Pl. *347 ; Story Confl. Laws ; *Watson* v. *Walker*, 23 N. H. 471 ; *Pearsall* v. *Dwight*, 2 Mass. 84 ; *Ferguson* v. *Clifford*, 37 N. H. 87.

III. Section 2 of chapter 149, Gen. Stats., does not apply to expressmen. Its terms are broad enough to cover expressmen. "All persons shall have reasonable and equal terms, &c., for the transportation of themselves, their agents, &c., and of any merchandise and property ; " but section 4 allows railroads to permit persons in charge of mails and expresses to pass over free. Mails and expresses are put upon the same footing ; and neither are embraced in section 2. If that section applies to the goods, it does not apply to the expressman. The railroad may allow an expressman to go free ; but of course they may charge him half or whole fare. In this case the person and the freight are coupled together, and the terms of transporting the two combined are alleged to be higher than those charged the Eastern Express Company. They lawfully may be. The fact that the railroad allows some party to go for less than the usual rates, does not give another party who pays the usual rates a right of action, for he is not aggrieved. The railroad might legally let the Eastern expressman go free on the road, and might legally charge the plaintiff, an expressman, the usual rate for himself, and charge both the usual rates for their goods ; then, although the combined charge for the plaintiff and his goods would be greater than that for the Eastern expressman and his goods, yet no

action would lie. So we submit that the plaintiff, alleging that the combined charge for himself and goods is greater than that paid by the Eastern expressman, but not stating how much was charged for the man, discloses no right of action, and does not give the defendants any information as to the claim they are to meet.

IV. The second and third counts do not aver any willingness to pay a reasonable, or any sum, for the transportation.

V. There is no allegation in the writ that the plaintiff was not allowed transportation, &c., upon equal terms with the public generally, carrying the same class of freight or engaged in the same business with himself, or that the usual terms were unjust or unreasonable; and the allegation, that he did not have terms equal with the Eastern express, does not tend to show that he was not afforded the equal terms and facilities to which he was by law entitled, and, therefore, shows no damage or right of action. *Fitchburg Railroad Co.* v. *Gray,* 12 Gray 399.

VI. The position, that a corporation may be guilty of a conspiracy with intent to cheat, is unsound. 1 Sharswood's Blackstone 476, note 11; *State* v. *Great Works Co.,* 20 Me. 41.

VII. The allegation that the defendants made the corrupt bargain set forth in the fourth count, giving the Eastern Express Company exclusive privileges over the railroad, must be construed with the other language of that count; and the whole count shows that the real grievance complained of is, that the Eastern company had better terms than the plaintiff. No point, however, is made in this allegation of corrupt bargain in the plaintiff's argument, and it was probably inserted only by way of embellishment.

*Worcester & Gafney* and *Frank Hobbs,* for the plaintiff.

FIRST BRIEF.

The defendants say the suit is founded upon section 2, chapter 149, Gen. Stats.; and the gist of the suit is, that the defendants furnished the Eastern Express Company greater facilities than the plaintiff for the transportation of freights of like kind and amount over the same parts of its road. The language of that section does not admit of any doubt. All parties, that is, persons, must pay alike for their freights. Section 4, chapter 149, Gen. Stats., does not effect section 2. Section 2 relates to tariff on the articles freighted, merchandise, &c. Section 4 relates not to freights, but to passes to be given to persons. It provides that certain persons may go free over the roads of this State, but does not, by any means, allow such persons to have their merchandise carried free, or at less rates than others. . By section 4, a stockholder, going to a meeting, may pass over the road without paying fare; but we do not think the court would hold that he would have the right to have a car, loaded with corn or any other merchandise, go over free on the same train. Section 4 relates to "the fare" of the "person,"— not to "merchandise" or "other property."

Section 4 gives a railroad the right to confer a favor upon certain classes. Yet we might well contend, were it requisite to this case, that all individuals, in a given class, must be treated alike ; that is, this plaintiff, when in charge of express matter, must receive the same concessions as are granted to any express company or party in charge of express matter. A contract, giving an express company on a passenger train exclusive rights and privileges, is both illegal and absolutely void. See Redf. on Railroads 33, sec. 5 ; *Sandford* v. *C. W. & E. Railroad Co.*, 24 Pa. St. 378. The statute upon which this last case rested is similar to our own, in substance. Persons, in charge of mails, are in the same category with express companies : but will the court hold that a mail agent has a right to have his freights at less rates. than other persons ? Suppose such mail agent has a cargo of coal from Portland to Rochester : can the railroad, under section 4, haul it at a less rate than it would haul the same for the plaintiff ? Can such agent have the mails, or any frieght belonging to him personally, carried free ? or, is it simply a power given the railroad to allow the agent, in person, to go free ? There is no obscurity, upon this point, as to persons in charge of mails ; but persons in charge of express matter stand in the same position, and are included in the same phrase, section, and chapter. All of the special powers conferred in section 4 are antagonistic to the great general principle, that every citizen shall enjoy, upon equal terms, the benefits of every public corporation whose franchise was demanded by and created for the use of the public ; and all exceptions to this doctrine are to be construed strictly. Cooley on Const. Lim. 393–397, inclusive. Section 2, chapter 149, Gen. Stats., regulates the matter of freight, and, upon the question of " rates " for " merchandise and other property," is not affected by section 4, same chapter.

The words of section 2 are,—"All persons shall have reasonable and equal terms, facilities, &c., * * * for the transportation of * * * any merchandise and other property." " The rates shall be the same * * * for like descriptions of freight between the. same points ; "— that is, so far as the " rates " for freight of " merchandise and other property," as contradistinguished from the " fare " of " persons " are concerned, all persons are to be treated alike, under similar conditions ;—and it makes no difference whether the " person " be an express company, or an individual, like this plaintiff, and they are to be furnished with all " reasonable " and with " equal facilities," &c. That is, " the statute requires the railway company to carry for all who apply, and upon equal terms·: they have no right to impose increased prices upon express carriers who send freight by the company's trains, in aggregate quantities, made up of small parcels directed to different persons." 2 Redf. on Railroads 33, sec. 5, citing *Pickford* v. *Grand Junction Railway Co.*, 10 M. & W. 399. That is, the railroads are legally bound to give all express carriers the same treatment and facilities and rates as are given to other parties, because they must carry for " all " on " equal " terms, and hence cannot discriminate against an express carrier, for such express carrier stands in the same position as any

other party, and, *pari passu*, the railroad cannot discriminate against other parties by giving such express carrier less prices.

The reason section 4, giving the railroad power to pass " persons in charge of mails and expresses" without payment of " fare," was enacted is, that, by taking charge of such expresses, the railroad is relieved of the obligation of looking after the freight, and is saved that expense.

Finally, the defendant corporation is a railroad operated in the State of Maine, as appears by the declaration and admitted by the demurrer, and, under section 79, chapter 51, p. 465, Rev. Stats. of Maine, is bound to " furnish reasonable and equal facilities and accommodations to all persons engaged in express business, for transportation of themselves, agents, servants, merchandise, and other property for the use of either depots, buildings, and grounds, and for exchanges at points of junction with other roads, * * * and shall be liable to the aggrieved party in an action on the case for damages." The action itself is transitory, and may be tried in any State, provided legal service has been made upon the defendants. Such service in the case at bar has been made, and the defendants have appeared. The statute, giving the action of case for damages, is not penal ; and, therefore, the courts of this jurisdiction will enforce the right of the plaintiff accruing to him by virtue of the statute of Maine, although the penalty incurred by the defendants, under the statutes of Maine, to be enforced by indictment, could not be enforced by an indictment in this State. The indictment, of course, must be instituted in Maine, and in the proper county. In transitory civil actions, for the recovery of damages and not to recover penalties, it is immaterial under the laws of what State the right of action accrues to a plaintiff. The only question is, Has the court, in which it is sought to enforce the right of action, acquired jurisdiction of the party ?

The statutes of Maine and of New Hampshire simply declare the common law relative to common carriers. This is decided in *New England Express Co.* v. *Maine Central Railroad Co.*, 57 Me. 188. In this case, the construction of the statute is settled by the supreme court of Maine, and fixes the rights of the parties, and must govern this court as to the construction to be given to that statute in the case at bar. This case is contained in 2 Redf. R. R. Cases 62, and the court are referred to the comments and citations of REDFIELD, J., in that vol., pp. 70, 71, and 72 ; and we presume the court will not deem it requisite in this case to go beyond the last case cited. The statute of New Hampshire is in substance the same as that in Maine.

## SECOND BRIEF.

It is not necessary to allege that the defendants are common carriers. Railroads are common carriers *ex vi termini*. They are created for the sole and express purpose of carrying goods and passengers, and are by law common carriers of goods. *Moses* v. *Boston & Maine Rail-*

*road*, 24 N. H. 90 ; Gen. Stats., ch. 145, secs; 3, 4, 5 ; ch. 146, sec. 1 ; ch. 149, secs. 1, 2 ; Charter of P. & R. Railroad, Pamphlet Laws, 1866, p. 3342. A railway company is a common carrier, unless exempt by some special provision. *Palmer* v. *Grand Junction Railway Co.*, 10 M. & W. 399 ; *Parker* v. *Great Western Railway Co.*, 8 Eng. L. & Eq. 426.

In every count of the declaration, the defendants are either expressly, or by reference to preceding counts, described as " engaged in the business of carrying passengers and merchandise, and in the transaction of such other business as is usually transacted by railroads," which phrase is a correct legal definition of common carriers. *Manchester & Lawrence Railroad* v. *Fisk*, 33 N. H. 297 ; *Bretherton* v. *Wood*, 3 B. & B. 54 ; *Pozzi* v. *Shipton*, 8 A. & E. 963.

The plaintiff in no count in the writ claims that the company was bound to carry the plaintiff's merchandise on the same terms that it did the merchandise of the Eastern Express Company ; but he does claim that the defendants should perform equal services for each at equal prices.

Although the words used in the declaration are the same as those used in the New Hampshire statute, viz., " all persons shall have reasonable and equal terms, facilities, and accommodations for the transportation of themselves, their agents, and servants," &c., yet this is no greater or different obligation than the common law imposes upon them as common carriers.

Although not obliged to transport goods and merchandise for all persons at the same rate, without regard to the quantity of goods or distance travelled, railroads are obliged to deal equally with all persons engaged in the same business ; that is, they shall not carry more favorably for one person than for another person engaged in the same business.

The statute of Maine, under which the action,—*New England Express Company* v. *Maine Central Railroad*, 57 Me.,—was decided, is, that " all expressmen, and all persons engaged in the express business, shall have reasonable and equal terms, facilities, and accommodations for the transportation of themselves, their agents, and servants, and of any merchandise and other property, upon any railroad owned and operated within the State," &c. ; see statute as cited by the court in that case. This statute was held by the supreme court of Maine to be nothing more than the duty imposed upon railroads by the common law. The same view was taken by the court in Pennsylvania, in *Sanford* v. *Railroad Company*, 24 Pa. St. 378. There the charter of the railroad company required the company " to transport, in the order in which they were requested, all goods, wares, minerals, and merchandise, and other articles which shall have been deposited at the company's depots, or convenient to said road, so that equal and impartial justice shall be done to all owners of property," &c. It was held by the court that this duty imposed by the charter was merely declaratory of the common law, and that all the similar provisions in statutes and

charters, both in this country and in England, are merely declaratory of the common law.  See, also, REDFIELD'S comments on the case in Me., 2 Redf. Railway Cases 62, 70, 71, 72.

Railroads, being common carriers, are *quasi* public officers, having public duties to perform, and must deal with all justly and equally. The defendants say that common carriers were not required at common law to perform equal services for their customers on equal terms, but only that they should charge a reasonable sum for their services.  The charge would not be reasonable unless it was equal.  It would not be reasonable for common carriers, in performing their duties to the public, to be allowed to perform the same service for one at a different price from that charged to another.  When the defendants claim that a common carrier can be restricted only in respect to the reasonableness of his charge, and may vary his price to suit his whim for the same services performed by him, he ignores entirely the public character of his duties.  " The hire charge must be no more than a reasonable remuneration to the carrier, and consequently not more to one than to another for the same service."  *Pickford* v. *Grand Junction Railway Co.*, 10 M. & W. 399 ; *Parker* v. *Great Western Railway Co.*, 8 Eng. L. & Eq. 426.

If reasonableness of charge without the quality of charge is the only duty in respect to his prices required of the common carriers, his duties in this regard differ hardly at all from those of any other bailee for hire.  The common carrier has no right to grant a monopoly to one of his customers by allowing him to pass free where he charges others for transportation.

The declaration is sufficient under the statute of New Hampshire. The defendants object because the declaration sets forth the road as engaged in the business of carrying passengers and merchandise to and from Rochester, and say that the court will take judicial notice that Rochester is a town on the boundary of the State, and will therefore hold that the declaration does not set forth that the wrong was done in this State.  This is too fine, in a mathematical point, to amount to a serious objection.  As the case finds that the railroad defendant runs two miles within this State, and since the allegation is that the road is operated in this State, the demurrer cannot have any force.

No reasonable mind would suppose that the plaintiff intended to say that the railroad merely runs to the *thread* line of the Salmon Falls river, which separates the States, especially after the statement in the declaration that the road was operated in this State.  It would be a very forced construction to say that the allegation means said railroad is engaged in business to and from the precise easterly boundary line of Rochester, and to and from the precise westerly boundary line of Portland.  The pleading in this respect is certain to a common intent, and it is not necessary to state that, besides the station at Rochester village, there is another station in this State at East Rochester.

Personal contracts may be enforced by the courts if the debtor be

found within 'the jurisdiction, though he be an alien, and the contract be made in a foreign country. But the different States of the Union are not foreign countries to each other. *Barrell* v. *Benjamin*, 15 Mass. 354.

So, also, actions may be brought for torts committed beyond the territorial jurisdiction of the court where the suit is brought, but within that of another State or county, although both parties may be aliens. *Mostyn* v. *Fabrigas*, Cowper 161, cited in Smith's L. C., vol. 1, p. 340 ; *Barrell* v. *Benjamin*, 15 Mass. 354 ; *Smith* v. *Bull*, 17 Wend. 325 ; *McCluer* v. *Manchester & Lawrence Railroad*, 13 Gray 124 ; *Langley* v. *Boston & Maine Railroad*, 10 Gray 103.

In England, courts have even exercised jurisdiction in the case of torts to real estate situate in Labrador, also in Nova Scotia, the gist of the action being of course local. Lord MANSFIELD, in *Mostyn* v. *Fabrigas*, *ante*.

There is certainly quite as much reason for holding that a statute shall have extra territorial force, as for holding that the rules of the common law shall have extra territorial force. But it is well settled that the rules of the common law, in reference to common carriers, apply equally to vessels engaged in foreign trade and to those engaged in internal navigation. 2 Kent 599 ; Story on Bailments, secs. 497–501 ; Angell on Common Carriers, sec. 88, p. 79 ; *Barber* v. *Brace*, 3 Conn. 9 ; *Williams* v. *Grant*, 1 Conn. 487. See Chief Justice SHAW, in *Hastings* v. *Pepper*, 11 Pick. 42.

But the statutes of our State afford the strongest evidence that the legislature and courts do claim and exercise control over railroad corporations, even beyond the line of the State. The very section (sec. 2, ch. 149, Gen. Stats.) on which this action was brought, supports this view. " All persons shall have reasonable and equal terms, &c.,    *    *    *    * upon any railroad owned or operated in this State."

Here it is apparent that the mere fact of ownership in this State, of a railroad incorporated therein, subjects the railroad to the liabilities and duties imposed by this statute. The design is, that in every case of a railroad incorporated in this State, where the party,—that is, the resident owners of the road, or the subject-matter, the railroad itself,— is within the jurisdiction, the railroad shall be subject to the duties and liabilities laid down in the statute ; also, in the act of incorporation of the Portland & Rochester Railroad, commencing with the title, " An act constituting the Portland & Rochester Railroad,—a corporation within this State. Be it enacted, &c.,    *    *    *

" SECTION 1. That the Portland & Rochester Railroad Company, a corporation formed and organized agreeably to the provisions of an act of the legislature of the State of Maine, approved March 25th, 1864, entitled, &c.,    *    *    *  be, and hereby is, made and constituted a corporation in this State under the authority thereof, and with all the rights and privileges, liabilities and duties, incident by the laws of this State to railroad corporations.    *    *    *

" SEC. 4. The legislature of this State shall at all times have the right

to authorize any other railroad corporation, incorporated under the laws of this State, so to connect their railroad with the railroad of said Portland & Rochester Railroad, that said Portland & Rochester Railroad may be obliged to receive, convey, and transport the freight and passengers of such connecting railroad, on terms and conditions, and at rates of toll, as favorable as those on which said Portland & Rochester Railroad convey and transport their own." Pamphlet Laws, 1866, ch. 4263.

Here is the identical corporation that was incorporated in Maine, incorporated and accepting incorporation in this State, not only as to the two miles of road in this State, but as to its whole extent, subject to the " liabilities and duties incident by the laws of this State to railroad corporations." The legislature, in this charter, claims and exercises the right to oblige this railroad to receive, convey, and transport the freight and passengers of connecting railroads, on terms and conditions as favorable as they convey their own. From this, it seems clear that the legislature controls the railroad throughout its whole extent, in regard to its liabilities and duties, at least as to business undertaken in this State with parties belonging in this State.

The acts complained of in each count of the declaration constitute but one offence, although the acts were performed in different States. But even should it be admitted that the laws of New Hampshire furnish the rule as to those acts committed within the limits of this State, and the laws of Maine furnish the rule as to the acts done in that State, yet it does not follow that the courts of this State would not have jurisdiction of the whole case.

Those matters only are demurrable which appear by the record. Now, it does not appear in any of the first four counts that the plaintiff is counting on anything that is not law in the State of Maine as well as in New Hampshire. What may be the law in Maine is a matter of fact to be proved to the court; and, since it does not appear by the declaration that we do count on the statutes of Maine, it is not demurrable on that ground. If there is anything in the laws of Maine which can save the defendants from the condemnation of our statute, it is for them to plead it and prove the law of Maine as a fact to the court.

The statement of the defendants that " it [the corporation] must dwell in the place of its creation and cannot migrate to another sovereignty," &c., is not pertinent to the real question, which is, not what the authority of the corporation may be, but what the authority of the State may be over the corporation, and what the duties and liabilities of the corporation may be to the State which created it. There can be nothing more unsound as law, or illogical as argument, than the conclusion reached by the defendants, that, because our statute and the charter of incorporation do not give the railroad extra territorial authority, therefore the statute has no authority over the corporation beyond the limits of this State, and that no action can lie under our statute for not transporting the plaintiff, &c., to Portland in the State of Maine,

or to and from any intermediate station which is not in this State, and that they could only be required to carry him to the State line. But this conclusion of the defendants is a legitimate deduction from their own doctrine, that the courts of this State cannot have jurisdiction of an action brought by a citizen of this State against a corporation incorporated in this State, and accepting incorporation under the conditions that " such corporations are bound by all laws of the State affecting the proprietors of railroads." Gen. Stats., ch. 154, sec. 2.

" The proprietors of every railroad shall in all things conform to the requirements of the laws ; shall not discontinue their road, nor any part of it ; shall keep it all in good repair, and discharge their duties in carrying passengers and freight, agreeably to the proper object and purpose of such railroad." Gen. Stats., ch. 145, sec. 3.

" The term proprietors of a railroad shall include the corporation to which any railroad was originally granted or into whose hand it was subsequently passed, the assignees or trustees to whom any railroad has been mortgaged for the security of debts, and any company or persons to whom it may have been conveyed." Gen. Stats., ch. 145, sec. 1.

From these extracts, it seems that by our statutes the proprietors were made identical with the corporation, and are held accountable for the management of the road throughout its whole extent. As to certain acts of the legislature, imposing liabilities upon and granting rights to railroads, they are local in their nature, and can have no force beyond the limits of the State. But in such cases the remedy is by some local action. Our statute, requiring the building of railroad fences, could not be enforced in Maine ; so, also, the chartering of railroad corporations, and clothing them with the right to take private property for their own use, are acts of sovereignty which can be exercised only upon the territory of the State enacting them. And when the defendants say that " prescribing rules which shall govern them are acts of sovereignty which can be exercised only on the territory of the State enacting them," we answer, that nothing in our position militates against this.

We, a citizen of New Hampshire, call upon the courts of New Hampshire to exercise on its own territory. this act of sovereignty, of enforcing the rules which the State has made for governing a corporation created by said State,—a portion of whose railroad lies within this State,—and which have accepted a charter that subjects them to the laws of this State, and by said acceptance have agreed to be governed by said laws and rules.

The plaintiff does claim that the first four counts of the declaration, though he has followed in them the precise words of the New Hampshire statute in setting forth his rights, would be held good under the Maine statute, since the statute of the State of Maine, in its provisions, is substantially the same as that of New Hampshire.

It is not true that the last two counts are expressly based on our statutes. In the count before the last, the phrase used is, " said railroad being by law obliged and required to grant said plaintiff reason-

able and equal terms, facilities," &c. The statement that the railroad is "by law obliged," &c., does not base it any more upon the statute than it does upon the common law.

Section 2, chapter 149, Gen. Stats., applies to expressmen. The defendants say that its terms are broad enough to cover expressmen, and yet declare that expresses are not embraced in that section. This seems contradictory.

There is no difficulty in regard to the reasonable construction of the statute.

"All persons" would of course include expressmen; and while the statute in section 4 gives permission to pass persons in charge of expresses free, it is not in conflict with the provisions of section 2 of the same chapter. The construction is plain, that, if some in a class are passed free, all in that class should be passed free, so that the terms upon which a railroad deals with expressmen shall be reasonable and equal.

The defendants object, because the plaintiff in his declaration combines in one count the two wrongs,—charging unequally for carrying himself and his goods. But the combination is in the statute. Suppose, as was the fact in this case, the charge was entire for the combined service of carrying the expressman and his merchandise, without any distinction being made as to what portion was charged for the messenger and what for the goods: on the defendants' principle, the road by this shallow trick would evade the statute altogether.

If the objections of the defendants, in reference to the construction of the second and fourth sections of chapter 149, General Statutes, are of sufficient weight to make it worth while to examine the question further, see *Sandford* v. *R. R. Co.*, 24 Pa. St., and *New England Express Co.* v. *Maine Central R. R.*, 57 Maine, before cited. See, in those cases, the manner in which similar objections are treated by the court.

What possible need is there of averring, in the second and third counts, "willingness to pay a reasonable, or any sum," when the plaintiff declares in both counts that he did pay. The plaintiff don't know what the road charged the public generally, carrying the same class of freight, or engaged in the same business with himself. The fact being within the knowledge of the defendants only, the plaintiff would not be required to state what he did not know.

A corporation may not be indictable for a conspiracy with intent to cheat, that is, as far as the authorities cited by the defendants go ; and it is placed by those authorities solely on the ground that corporations are not indictable, except in certain cases provided by the statute, but they are liable to civil actions for conspiracy.

An examination of the fourth count will show that the construction claimed by the defendants for it is entirely incorrect.

It was not necessary to allege the defendants to be common carriers.

The statutes fix the duties of all railroads in this State, and it is enough to allege the defendants to be a railroad operated in this State. In the words of a learned jurist, in speaking of railroads,—"They are

created for the express and sole purpose of carrying goods and passengers, and are by law common carriers of goods." PERLEY, J., 24 N. H. 90. The defendants, by their demurrer, admit every allegation of fact. The statute of New Hampshire makes it the duty of such railroads to take all freight at reasonable and equal rates, etc., and this suffices this plaintiff. It was not necessary to allege " any duty imposed on the defendants by their charter." It matters not whether the " duty" be under the charter, the statute, or at common law, or by virtue of a contract under Gen. Stats., ch. 150. It is enough that it is alleged that the defendants were bound, &c., and that the demurrer admits the allegation. If the defendants' position be true, that at common law a common carrier was not under obligation to charge equal rates, then, as to railroads, the statutes of this State have changed the common law upon that point, and demand not only reasonable but equal rates and facilities.

It was not necessary to allege either an offer or willingness to pay. That is required only in case where there has been a refusal to accept for transportation, which is not this case. The case at bar is for refusing and neglecting to furnish reasonable accommodations for " goods," etc., actually accepted and transported, and for unequal and illegal charges on freight actually freighted. A party may refuse to accept freight, but if he actually accepts and transports freight, his responsibility is just the same as if freight had been paid in advance. In *Hall* v. *Cheney*, 36 N. H. 33, C. J. PERLEY says,—" The declaration does not allege that a compensation was paid, or offered to be paid, for carrying the same. But the action having been case, this was not necessary, as was held in *Coggs* v. *Bernard*," 2 Redf. on R. R., last ed., p. 211, note 11. In the case at bar, as in *Hall* v. *Cheney*, the defendants cannot, by waiving their right to demand pay in advance, thereby relieve themselves of any duty under the statutes, and must furnish equal terms, &c., to and for all freight, &c., actually transported.

The first count alleges that the defendants did not furnish reasonable terms, &c.

The second count is substantially the same, with an allegation of payment by the plaintiff.

The third count alleges payment by the plaintiff to the defendants all the defendants charged, and that it was excessive.

The fourth count alleges an offer and willingness to pay, &c. All of these counts state the substance of the statutes of both Maine and New Hampshire.

To " plead" a statute is to state its substance. To recite a statute is to give its exact words. To count on a statute is to add " *contra formam.*" It is always sufficient in a declaration to plead the statute. Gould on Pleading, 1st ed., ch. 3, sec. 16, note 3, p. 56.

So far as the substance of the statute of Maine is concerned, it is purely a question of fact to be proved, and " may be denied by plea ; and when so denied, it must be proved as a fact, and can be tried only on an issue in fact." Gould Plead., cited above. For this reason, at

the time this case came up the plaintiff should have been allowed to go
to the jury ; and herein is one of the points involved, which, the plain-
tiff claims, should appear in the printed case.    Yet this " fact" is ad-
mitted by the demurrer, that the defendants were bound to transport at
equal rates, &c., from Rochester to Portland, as alleged.  The allegation,
that the defendants were bound to transport from Rochester to Port-
land, and furnish equal terms, &c., is ,not an allegation dependent on
a matter of law ; for as to this case the allegation is the allegation
of a matter of fact, and is admitted, so far as the statute of Maine
is concerned.    The only question is, Can the corporation in New
Hampshire be held to any such liability over a road in another
State ?—and we understand that the law is well settled, in this State,
that the corporation is so held.    We understand this very point to be
the point adjudicated in *Barter* v. *Wheeler*, 49 N. H. 29, and in
*Lock Co.* v. *Railroad*, 48 N. H. 345, and cited and approved by BEL-
LOWS, C. J., in *N. R. R.* v. *C. R. R.*, 50 N. H. 190.    We understand
that the case in 49 N. H. 29 decides that, so far as the plaintiff was
injured in the State of Maine, the laws of that State are to govern
the rights and determine the liabilities of the parties.    The defendants
had better wait until the time comes for the plaintiff to prove the
statutes of Maine, as a fact.    *Fitchburg R. R.* v. *Gage*, 12 Gray 393.
is not in point.  On page 398 of this case, ch. 39, sec. 83 of the General
Statutes of Massachusetts is cited, by which statute " every railroad
corporation are authorized to establish, for their sole benefit, &c., such
rates as the directors may determine."    There is no provision that the
rates shall be equal, or that the accommodations shall be reasonable,
&c ; and so far as that case states the common law duty of common
carriers, it is in conflict with 10 N. H. 486.    A common carrier may
make a reasonable charge, but it is unreasonable to charge for like
services one price to A and another price to B.    What reason is there
for a discrimination ?    Please give a reason why it should be done ?
If there is no reason, then it is without a reason ; and if it be without a
reason, it is " unreasonable ;" and being unreasonable, it is illegal, and
the defendants are liable.    The defendants' position as to intermediate
stations, &c., does not avail, for the plaintiff had a right of transporta-
tion on equal terms, and a right to reasonable facilities, &c., " between
the same points," not between stations merely of the defendant road.
In the new count, where the term " points" is used, the defendants are
and were bound to furnish over their road in this State equal and rea-
sonable accommodations ; and the new count alleges that they did not
furnish such accommodations.

The point to this count is, that the defendants did not furnish reason-
able accommodations, &c., nor equal rates ; and the defendants' asser-
tion, that " the point of every count in the writ is that the defendants
did not carry the plaintiff and his express matter upon the same
terms that they did for the Eastern express," is a gross mistake.

DOE, J.  I.  A common carrier is a public carrier.  He engages in a

public employment, takes upon himself a public duty, and exercises a sort of public office. *Sandford* v. *R. Co.*, 24 Pa. St. 378, 381; *N. J. S. N. Co.* v: *Merchants' Bank*, 6 How. 344, 382; *Shelden* v. *Robinson*, . 7 N. H. 157, 163, 164; *Gray* v. *Jackson*, 51 N. H. 9, 10; *Ansell* v. *Waterhouse*, 2 Chitty 1, 4; *Hollister* v. *Nowlen*, 19 Wend. 234, 239. He is under a legal obligation; others have a corresponding legal right. His duty being public, the correlative right is public. The public right is a common right, and a common right signifies a reasonably equal right. " There are certain cases, in which, if individuals dedicate their personal services, or the temporary use of their property, to the public, the law will impose certain duties upon them, and regulate their proceedings to a certain extent. Thus, a common carrier is bound by law, if he have conveniences for the purpose, to carry for a reasonable compensation." *Olcott* v. *Banfill*, 4 N. H. 537, 546. " He [the common carrier] holds a sort of official relation to the public. He is bound to carry at reasonable rates such commodities as are in his line of business, for all persons who offer them, as early as his means will allow. He cannot refuse to carry a proper article, tendered to him at a suitable time and place, on the offer of the usual reasonable compensation. Story on Bailments, sec. 508; *Riley* v. *Horne*, 5 Bing. 217, 224; *Bennett* v. *Dutton*, 10 N. H. 486. When he undertakes the business of a common carrier, he assumes this relation to the public, and he is not at liberty to decline the duties and responsibilities of his place, as they are defined and fixed by law." *Moses* v. *B. & M. R. R.*, 24 N. H. 71, 88, 89. On this ground, it was held, in that case, that a common carrier could not, by a public notice, discharge himself from the legal responsibility pertaining to his office, or from performing his public duty in the way and on the terms prescribed by law.

" The very definition of a common carrier excludes the idea of the right to grant monopolies, or to give special and unequal preferences. It implies indifference as to whom they may serve, and an equal readiness to serve all who may apply, and in the order of their application." *N. E. Express Co.* v. *M. C. R. R. Co.*, 57 Me. 188, 196. A common carrier of passengers cannot exercise an unreasonable discrimination in carrying one and refusing to carry another. *Bennett* v. *Dutton*, 10 N. H. 481. A common carrier of freight cannot exercise an unreasonable discrimination in carrying for one and refusing to carry for another. He may be a common carrier of one kind of property, and not of another; but, as to goods of which he is a common carrier, he cannot discriminate unreasonably against any individual in the performance of the public duty which he assumed when he engaged in the occupation of carrying for all. His service would not be public, if, out of the persons and things in his line of business, he could arbitrarily select whom and what he would carry. Such a power of arbitrary selection would destroy the public character of his employment, and the rights which the public acquired when he volunteered in the public service of common-carrier transportation. With such a power, he would be a carrier, —a special, private carrier, but not a common, public one. From the

public service,—which he entered of his own accord,—he may retire, ceasing to be a common carrier, with or without the public consent, according to the law applicable to his case ; but, as long as he remains in the service, he must perform the duties appertaining to it.    The remedies for neglect or violation of duty in the civil service of the State are not the same as in the military service ; but the public rights of having the duties of each performed are much the same, and, in the department now under consideration, ample remedies are not wanting.    The right to the transportation service of a common carrier is a common as well as a public right, belonging to every individual as well as to the State.    A right of conveyance, unreasonably and injuriously preferred and exclusive, and made so by a special contract of the common carrier, is not the common, public right, but a violation of it. And when an individual is specially injured by such a violation of the common right which he is entitled to enjoy, he may have redress in an action at common law.    The common carrier has no cause to complain of his legal responsibility.    It was for him to consider as well the duty as the profit of being a public servant, before embarking in that business.    The profit could not be considered without taking the duty into account, for the rightful profit is the balance of compensation left after paying the expenses of performing the duty.    And he knew beforehand, or ought to have known, that, if no profit should accrue, the performance of the duty would be none the less obligatory until he should be discharged from the public service.    *Taylor* v. *Railway*, 48 N. H. 304, 317.    The chances of profit and loss are his risks, being necessary incidents of his adventure, and for him to judge of before devoting his time, labor, care, skill, and capital to the service of the country.    Profitable or unprofitable, his condition is that of one held to service, having, by his own act, of his own free will, submitted himself to that condition, and not having liberated himself, nor been released, from it.

A common carrier cannot directly exercise unreasonable discrimination as to whom and what he will carry.    On what legal ground can he exercise such discrimination indirectly ?    He cannot, without good reason, while carrying A, unconditionally refuse to carry B.    On what legal ground can he, without good reason, while providing agreeable terms, facilities, and accommodations for the conveyance of A and his goods, provide such disagreeable ones for B that he is practically compelled to stay at home with his goods, deprived of his share of the common right of transportation ?    What legal principle, guaranteeing the common right against direct attack, sanctions its destruction by a circuitous invasion ?    As no one can infringe the common right of travel and commercial intercourse over a public highway, on land or water, by making the way absolutely impassable, or rendering its passage unreasonably unpleasant, unhealthy, or unprofitable, so a common carrier cannot infringe the common right of common carriage, either by unreasonably refusing to carry one or all, for one or for all, or by imposing unreasonably unequal terms, facilities, or accommodations, which would practically amount to an embargo upon the travel

or traffic of some disfavored individual.   And, as all common carriers combined cannot, directly or indirectly, destroy or interrupt the common right by stopping their branch of the public service while they remain in that service, so neither all of them together, nor one alone, can, directly or indirectly, deprive any individual of his lawful enjoyment of the common right.   Equality, in the sense of freedom from unreasonable discrimination, being of the very substance of the common right, an individual is deprived of his lawful enjoyment of the common right when he is subjected to unreasonable and injurious discrimination in respect to terms, facilities, or accommodations.   That is not, in the ordinary legal sense, a public highway, in which one man is unreasonably privileged to use a convenient path, and another is unreasonably restricted to the gutter; and that is not a public service of common carriage, in which one enjoys an unreasonable preference or advantage, and another suffers an unreasonable prejudice or disadvantage.   A denial of the entire right of service by a refusal to carry, differs, if at all, in degree only, and the amount of damage done, and not in the essential legal character of the act, from a denial of the right in part by an unreasonable discrimination in terms, facilities, or accommodations.   Whether the denial is general by refusing to furnish any transportation whatever, or special by refusing to carry one person or his goods; whether it is direct by expressly refusing to carry, or indirect by imposing such unreasonable terms, facilities, or accommodations as render carriage undesirable; whether unreasonableness of terms, facilities, or accommodations operates as a total or a partial denial of the right; and whether the unreasonableness is in the intrinsic, individual nature of the terms, facilities, or accommodations, or in their discriminating, collective, and comparative character,—the right denied is one and the same common right, which would not be a right if it could be rightfully denied, and would not be common, in the legal sense, if it could be legally subjected to unreasonable discrimination, and parcelled out among men in unreasonably superior and inferior grades at the behest of the servant from whom the service is due.

The commonness of the right necessarily implies an equality of right, in the sense of freedom from unreasonable discrimination; and any practical invasion of the common right by an unreasonable discrimination practised by a carrier held to the common service, is insubordination and mutiny, for which he is liable, to the extent of the damage inflicted, in an action of case at common law.   The question of reasonableness of price may be something more than the question of actual cost and value of service.   If the actual value of certain transportation of one hundred barrels of flour, affording a reasonable profit to the carrier, is one hundred dollars; if, all the circumstances that ought to be considered being taken into account, that sum is the price which ought to be charged for that particular service; and if the carrier charges everybody that price for that service, there is no encroachment on the common right.   But if, for that service, the carrier charges one flour merchant one hundred dollars, and another fifty dollars, the

common right is as manifestly violated as if the latter were charged one hundred dollars, and the former two hundred.   What kind of a common right of carriage would that be which the carrier could so administer as to unreasonably, capriciously, and despotically enrich one man and ruin another ?   If the service or price is unreasonable and injurious, the unreasonableness is equally actionable, whether it is in inequality, or in some other particular.   A service or price that would otherwise be reasonable, may be made unreasonable by an unreasonable discrimination, because such a discrimination is a violation of the common right.   There might be cases where persons complaining of such a violation would have no cause of action, because they would not be injured.   There might be cases where the discrimination would be injurious : in such cases it would be actionable.   There might be cases where the remedy by civil suit for damages at common law would be practically ineffectual on account of the difficulty of proving large damages, or the incompetence of a multiplicity of such suits to abate a continued grievance, or for other reasons : in such cases there would be a plain and adequate remedy, where there ought to be one, by the reënforcing operation of an injunction, or by indictment, information, or other common, familiar, and appropriate course of law.

The common and equal right is to reasonable transportation service for a reasonable compensation.   Neither the service nor the price is necessarily unreasonable because it is unequal, in a certain narrow, strict, and literal sense ; but that is not a reasonable service, or a reasonable price, which is unreasonably unequal.   The question is not merely whether the service or price is absolutely unequal, in the narrowest sense, but also whether the inequality is unreasonable and injurious.   There may be acts of charity ; there may be different prices for different kinds or amounts of service ; there may be many differences of price and service, entirely consistent with the general principle of reasonable equality which distinguishes the duty of a common carrier in the legal sense, from the duty of a carrier who is not a common one in that sense.   A certain inequality of terms, facilities, or accommodations may be reasonable, and required by the doctrine of reasonableness, and, therefore, not an infringement of the common right.   It may be the duty of a common carrier of passengers to carry under discriminating restrictions, or to refuse to carry those who, by reason of their physical or mental condition, would injure, endanger, disturb, or annoy other passengers ; and an analogous rule may be applicable to the common carriage of goods.   Healthy passengers in a palatial car would not be provided with reasonable accommodations, if they were there unreasonably and negligently exposed, by the carrier, to the society of small-pox patients.   Sober, quiet, moral, and sensitive travellers may have cause to complain of their accommodations, if they are unreasonably exposed to the companionship of unrestrained, intoxicated, noisy, profane, and abusive passengers, who may enjoy the discomfort they cast upon others.   In one sense, both classes, carried together, might be provided with equal accommodations ; in another

sense, they would not. The feelings not corporal, and the decencies of progressive civilization, as well as physical life, health, and comfort, are entitled to reasonable accommodations. 2 Greenl. Ev., sec. 222 *a ;* *Bennett* v. *Dutton,* 10 N. H. 481, 486. Mental and moral sensibilities, unreasonably wounded, may be an actual cause of suffering, as plain as a broken limb ; and, if the injury is caused by unreasonableness of facilities or accommodations (which is synonymous with unreasonableness of service), it may be as plain a legal cause of action as any bodily hurt, commercial inconvenience, or pecuniary loss. To allow one passenger to be made uncomfortable by another committing an outrage, without physical violence, against the ordinary proprieties of life and the common sentiments of mankind, may be as clear a violation of the common right and as clear an actionable neglect of a common carrier's duty, as to permit one to occupy two seats while another stands in the aisle. Although reasonableness of service or price may require a reasonable discrimination, it does not tolerate an unreasonable one ; and the law does not require a court or jury to waste time in a useless investigation of the question whether a proved injurious unreasonableness of service or price was in its intrinsic or in its discriminating quality. The main question is, not whether the unreasonableness was in this or in that, but whether there was unreasonableness, and whether it was injurious to the plaintiff.

This question may be made unnecessarily difficult by an indefiniteness, confusion, and obscurity of ideas that may arise when the public duty of a common carrier, and the correlative common right to his reasonable service for a reasonable price, are not clearly and broadly distinguished from a matter of private charity. If A receives, as a charity, transportation service without price, or for less than a reasonable price, from B, who is a common carrier, A does not receive it as his enjoyment of the common right ; B does not give it as a performance of his public duty ; C, who is required to pay a reasonable price for a reasonable service, is not injured ; and the public, supplied with reasonable facilities and accommodations on reasonable terms, cannot complain that B is violating his public duty. There is, in such a case, no discrimination, reasonable or unreasonable, in that reasonable service for a reasonable price which is the common right. A person who is a common carrier may devote to the needy, in any necessary form of relief, all the reasonable profits of his business. He has the same right that any one else has to give money or goods or transportation to the poor. But it is neither his legal duty to be charitable at his own expense, nor his legal right to be charitable at the expense of those whose servant he is. If his reasonable compensation for certain carriage is one hundred dollars, and his just profit, not needed in his business, is one tenth of that sum, he has ten dollars which he may legally use for feeding the hungry, clothing the naked, or carrying those in poverty, to whom transportation is one of the necessaries of life, and who suffer for lack of it. But if he charges the ten dollars to those who pay him for their transportation, if he charges them one

hundred and ten dollars for one hundred dollars' worth of service, he is not benevolent himself, but he is undertaking to compel those to be benevolent who are entitled to his service ; he is violating the common right of reasonable terms, which cannot be increased by compulsory contributions for any charitable purpose.   So, if he carries one or many for half the reasonable price, and reimburses himself by charging others more than the reasonable price, he is illegally administering, not his own, but other people's charity.   And when he attempts to justify an instance of apparent discrimination on the ground of charity, it may be necessary to ascertain whose charity was dispensed,— whether it was his, or one forced by him from others, including the party complaining of it.   But it will not be necessary to consider this point further until there is some reason to believe that what the plaintiff complains of is defended as an act of disinterested benevolence performed by the railroad at its own expense.

In *Garton* v. *B. & E. R. Co.*, 1 B. & S. 112, 154, 165, when it was not found that any unreasonable inequality had been made by the defendants to the detriment of the plaintiffs, it was held that a reasonable price paid by them was not made unreasonable by a less price paid by others—a proposition sufficiently plain, and expressed by CROMPTON, J., in another form, when he said to the plaintiffs' counsel during the argument of that case,—" The charging another person too little is not charging you too much."   The proposition takes it for granted that it has been settled that the price paid by the party complaining was reasonable,—a conclusion that settles the whole controversy as to that price.   But before that conclusion is reached, it may be necessary to determine whether the receipt of a less price from another person was a matter of charity, or an unreasonable discrimination and a violation of the common right.   Charging A less than B for the same service, or service of the same value, is not of itself necessarily charging A too little, or charging B too much ; but it may be evidence tending to show that B is charged too much, either by being charged more than the actual value of the service, or by being made the victim of an unjustifiable discrimination.   The doctrine of reasonableness is not to be overturned by a conclusive presumption that every inequality of price is the work of alms-giving, dictated by a motive of humanity.   If an apparent discrimination turns out, on examination, to have been, not a discrimination in the performance of the public duty, but a private charity, there is an end of the case.   But if an apparent discrimination is found to have been a real one, the question is whether it was reasonable, and, if unreasonable, whether the party complaining was injured by it.

In some cases, this may be an inquiry of some difficulty in each of its branches.   But such difficulty as there may be will arise from the breadth of the inquiry, the intricate nature of the matter to be investigated, the circumstantial character of the evidence to be weighed, and the application of the legal rule to the facts, and not from any want of clearness or certainty in the general principle of the common law

applicable to the subject. The difficulty will not be in the common law, and cannot be justly overcome by altering that law. The inquiry may sometimes be a broad one, but it will never be broader than the justice of the case requires. A narrow view that would be partial, cannot be taken ; a narrow test of right and wrong that would be grossly inequitable, cannot be adopted. If the doctrine of reasonableness is not the doctrine of justice, it is for him who is dissatisfied with it to show its injustice ; if it is the doctrine of justice, it is for him to show the grounds of his discontent.

The decision in *N. E. Express Co.* v. *M. C. R. Co.*, 57 Me. 188, satisfactorily disposed of the argument, vigorously and ably pressed by the defendants in that case, that a railroad, carrying one expressman and his freight on passenger trains, on certain reasonable conditions, but under an agreement not to perform a like service for others, does not thereby hold itself out as a common carrier of expressmen and their freight on passenger trains, on similar conditions. So far as the common right of mere transportation is concerned, and without reference to the peculiar liability of a common carrier of goods as an insurer, such an arrangement would, necessarily and without hesitation, be found, by the court or the jury, to be an evasion. A railroad corporation, carrying one expressman, and enabling him to do all the express business on the line of their road, do hold themselves out as common carriers of expresses ; and when they unreasonably refuse, directly or indirectly, to carry any more public servants of that class, they perform this duty with illegal partiality. The legal principle, which establishes and secures the common right, being the perfection of reason, the right is not a mere nominal one, and is in no danger of being destroyed by a quibble. If there could possibly be a case in which the exclusive arrangement in favor of one expressman would not be an evasion of the common law right, the question might arise, whether, under our statute law (Gen. Stats. chs. 145, 146, 149, 150), public railroad corporations are not common carriers (at least to the extent of furnishing reasonable facilities and accommodations of transportation on reasonable terms) of such passengers and such freight as there is no good reason for their refusing to carry.

The public would seem to have reason to claim, that the clause of Gen. Stats., ch. 146, sec. 1,—"Railroads being designed for the public accommodation, like other highways, are public,"—is a very comprehensive provision ; that public agents, taking private property for the public use, are bound to treat all alike (that is, without unreasonable preference), so far as the property is used, or its use is rightfully demanded, by the public for whose use it was taken ; and that, in a country professing to base its institutions on the natural equality of men in respect to legal rights and remedies, it cannot be presumed that the legislature intended, in the charter of a common carrier, to grant an implied power to create monopolies in the express business, or in any other business, by undue and unreasonable discriminations. There would seem to be great doubt whether, upon any fair construc-

tion of general or special statutes, a common carrier, incorporated in
this country, could be held to have received from the legislature the
power of making unreasonable discriminations and creating monopolies,
unless such power were conferred in very explicit terms.   And, if such
power were attempted to be conferred, there would be, in this State, a
question of the constitutional authority of the legislature to convey a
prerogative so hostile to the character of our institutions and the spirit
of the organic law.   But, resting the decision of this case, as we do,
on the simple, elementary, and unrepealed principle of the common
law, equally applicable to individuals and corporations, we have no
occasion, at present, to go into these other inquiries.

   We might have safely rested our opinion on the authority of *N. E.
Express Co.* v. *M. C. Railroad Co.*, 57 Me. 188, *Sandford* v. *Railroad
Co.*, 24 Pa. St. 378, *C. B. & Q. Railroad·Co.* v. *Parks*, 18 Ill. 460,
464, and 2 Redfield Am. R. R. Cases 71.   But it seemed desirable
that it should be distinctly founded on a general and fundamental prin-
ciple, which does not need the support of, and could hardly be shaken
by, decided cases.   We have carefully examined *F. Railroad Co.* v.
*Gage*, 12 Gray 393, and have not overlooked the fact that, in England,
it seems to be supposed that, at common law, common carriers are not
bound to carry all and for all on reasonably equal terms.   *Baxendale*
v. *E. C. R. Co.*, 4 C. B. (N. S.) 63 ; *Branley* v. *S. E. R. Co.*, 12 *id.*
63, 75.   The position of the English law appears to be plain and in-
structive.   The principal English cases usually cited are *Pickford* v. *G.
J. R. Co.*, 10 M. & W. 399 ; S. C. in Equity, 3 Eng. Railway & Canal
Cases 538 ;   *Parker* v. *G. W. R. Co.*, 7 M. & G. 253 ;   *Crouch* v. *L.
& N. W. R. Co.*, 2 C. & K. 789; *Parker* v. *G. W. R. Co.*, 11 C. B.
545 ; *Edwards* v. *G. W. R. Co.*, 11 C. B. 588 ;   *Crouch* v. *L. & N. W.
R. Co.*, 14 C. B. 255 ;   *Crouch* v. *G. N. R. Co.*, 9 W. H. & G. 556 ;
*Finnie* v. *G. & S. W. R.*, 2 Macqueen H. of L. Cas. 177 ; S. C. 34
Eng. L. & Eq. 11 ;   *Crouch* v. *G. N. R. Co.*, 11 H. & G. 742 ; *Barker*
v. *M. R. Co.*, 18 C. B. 46 ; *Parker* v. *G. W. R. Co.*, 6 E. & B. 77 ;
*Caterham R. Co.* v. *L. B. & S. C. R. Co.*, 1 C. B. (N. S.) 410 ; *Bar-
ret* v. *G. N. R. Co.*, *id.* 423 ; *Ransome* v. *E. C. R. Co.*, *id.* 437 ; *Ox-
lade* v. *N. E. R. Co.*, *id.* 454; *Marriott* v. *L. & S. W. R. Co.*, *id.* 499 ;
*Beadell* v. *E. C. R. Co.*, 2 C. B. (N. S.) 509 ; *Painter* v. *L. B. & S.
C. R. Co.*, *id.* 702 ; *Baxendale* v. *N. D. R. Co.*, 3 C. B. (N. S.) 324 ;
*Harris* v. *C. & W. R. Co.*, *id.* 693 ; *Jones* v. *E. C. R. Co.*, *id.* 718 ;
*Baxendale* v. *E. C. R. Co.*, 4 C. B. (N. S.) 63 ; *Ransome* v. *E. C. R.
Co.*, *id.* 135 ; *Cooper* v. *L. & S. W. R. Co.*, *id.* 738 ; *Piddington* v. *S. E.
R. Co.*, 5 C. B. (N. S.) 111 ; *Baxendale* v. *G. W. R. Co.*, *id.* 309 ;
*Baxendale* v. *G. W. R. Co.*, *id.* 336 ; *Nicholson* v. *G. W. R. Co.*, *id.*
366 ; *Garton* v. *G. W. R. Co.*, *id.* 669 ; *Garton* v. *B. & E. R. Co.*, 4
H. & N. 33 ; *Garton* v. *B. & E. R. Co.*, 6 C. B. (N. S.) 639 ; *Bennett*
v. *M. S. & L. R. Co.*, *id.* 707 ; *Nicholson* v. *G. W. R. Co.*, 7 C. B.
(N. S.) 755 ; *Ransome* v. *E. C. R. Co.*, 8 C. B. (N. S.) 709; *Garton*
v. *B. & E. R. Co.*, 1 B. & S. 112 ; *Baxendale* v. *B. & E. R. Co.*, 11
C. B. (N. S.) 787 ; *Branley* v. *S. E. R. Co.*, 12 C. B. (N. S.) 63 ;

*Baxendale* v. *L. & S. W. R. Co.*, *id.* 758 ; *Baxendale* v. *G. W. R. Co.*, 14 C. B. (N. S.) 1 ; *Baxendale* v. *G. W. R. Co.*, 16 C. B. (N. S.) 137 ; *Sutton* v. *G. W. R. Co.*, 3 H. & C. 800 ; *Baxendale* v. *L. & S. W. R. Co.*, L. R. 1 Exchq. 137 ; S. C., 4 H. & C. 130 ; *Palmer* v. *L. & S. W. R. Co.*, L. R. 1 C. P. 588 ; *West* v. *L. & N. W. R. Co.*, L. R. 5 C. P. 622 ; *Palmer* v. *L. B. & S. C. R. Co.*, L. R. 6 C. P. 194 ; *Parkinson* v. *G. W. R. Co.*, *id.* 554.

These cases seem to be based on statutes general or special. The English parliament has been extremely vigilant and industrious in putting, in the charters of corporations, provisions for the protection of the rights of individuals and the public. Out of abundant caution, and for the information of those specially concerned, and to guard against any possible construction by implication repealing the common law, they affirmed some of its simplest rules. *Sandford* v. *Railroad Co.*, 24 Pa. St. 378. In charters of common carriers, what is called the equality clause was inserted, requiring the carriers to furnish transportation on equal terms. The fashion of legislation once set, was studiously followed with a' degree of reverence for precedent that does not prevail in this country. General statutes were passed, enacting the common law doctrine of reasonable equality, and new methods of enforcing it were introduced. And the practice of the English courts, on charters and general acts of this kind, has been so long continued, that the fact seems now to be overlooked that the general principle of equality is the principle of the common law. With so much legislation on the subject as there has been in that country, and so much litigation upon acts of parliament, it was not strange that the bar and bench should finally lose sight of the common law origin of the principle so many times enacted in different forms, and carried out in different methods prescribed by parliament. It seems to have been a result of the anxiety of parliament, that, instead of merely providing such new remedies and modes of judicial procedure as they deemed necessary for the enforcement of the common law, they repeatedly reënacted the common law, until it came to be supposed that, in such an important matter as the public service of transportation by common carriers, the public were indebted, for the doctrine of equal right, to the modern vigilance of parliament, instead of the system of legal reason which had been the birthright of Englishmen for many ages. A mistake of this kind is an evil of some magnitude. It unjustly weakens the confidence of the community in the wisdom and justice of the ancient system, and impairs its vigor. When the understanding prevails that equality, in a branch of the public service so vast as that of transportation by common carriers, depends upon the action of a legislature declaring it by statute, and attempting the difficult task of accurately expressing the whole length and breadth of the doctrine in words not defined in the common law, public and common rights of immense value are removed from a natural, broad, and firm foundation, to one that is artificial and narrow, and consequently less secure ; and many results of ill consequence flow from such a misconception of the free institutions of the common law.

English cases, based on statutes passed in affirmance of the common law, are precedents and authorities on the reasonableness of common carriers' discriminations that may be useful in this country.   Even if it should be found that, in those cases, a question of fact is sometimes decided as a question of law, or that, in cases tried by the court without a jury, the distinction between law and fact is sometimes lost, the decisions may still, for some purposes, be of material value.   But the common law rule of equal right and reasonableness is the ground on which we stand.   " Common," in its legal sense, used as the description of the carrier and his duty and the correlative right of the public, contains the whole doctrine of the common law on the subject.   The defendants are common carriers.   That is all that need be said.   All beyond that can be no more than an explanation or application of the legal meaning of " common " in that connection.

II. The views already stated necessarily lead to the opinion that the equality clause of section 2, chapter 149, Gen. Stats., requiring that all persons shall have reasonable and equal terms, facilities, and accommodations for the transportation of themselves, their agents, and servants, and of any merchandise and other property, upon any railroad owned or operated in this State, and for the use of the depot and other buildings and grounds, is, so far as it has any application to the present posture of this case, merely declaratory of the common law, which, by section 3 of the same chapter, may be enforced by indictment* as well as by suit for damages.   Section 4 allows railroads to carry stockholders going to or returning from the meetings of the proprietors, persons in charge of mails and expresses, poor persons, and others; without payment of the regular fare.   Poor persons, unable to pay the regular fare, may be relieved.   As to them the common law is not changed.   And the statute, construed by the reason of the common law which it affirms, might well be held to leave the matter of charity to the direction of the carrier.   And, as to matters of business—matters within the public duty of the carrier, and the common right of mankind—the statute, requiring reasonableness and equality in affirmance of the common law, is to be construed by the reason of the common law, and the whole statute is to be construed together. When section 2 says all persons shall have reasonable and equal terms, and section 4 allows expressmen and others to be carried without payment of the regular fare, both sections, taken together, do not allow any unreasonable discrimination between expressmen, or between any individuals or classes of the human race.   The equality clause of the

---

\* NOTE.   In *State* v. *Grand Trunk Railway Co.* (Coös, Dec., 1872), it was *held*, that the first clause of section 2 relates solely to the contents of the table of prices required by section 1 to be posted in railroad depots. This result was reached upon a consideration of previous legislation on this topic.   P. L. 1850, ch. 953, sec. 4; P. L. 1852, ch. 1277, sec. 1; Report of Comrs. of Revision of 1867, ch. 150, secs. 1, 2.      REPORTER.

second section is the gist of the statute in relation to discrimination. Sections 4 and 5 are illustrations, showing, to a certain extent, the application of the common law doctrine of reasonable equality. In regard to the general doctrine, the statute, so far as it goes, is as broad and sweeping as the common law. The persons who are allowed, by section 4, to be carried without payment of the regular fare, can no more be made the subjects of an unreasonable discrimination than they could if that section were not in the statute. The fact that there may be a reasonable discrimination between wholesale and retail prices of transportation of passengers, as well as between wholesale and retail prices of lands or goods, seems to be recognized by the fifth section; but the Eastern Express Company, if they are such a company as their name indicates, are not one of the " other organized companies " alluded to in that section.

III. A part of the defendants' road is in Maine, and a part in New Hampshire. The defendants are, for ordinary practical purposes, one and the same corporation in each State, and are under the same common law obligations in each State. We know not how any individuals or corporations of New Hampshire can be aggrieved, in such cases as this, if the common law of both States is administered to them by the tribunals of Maine. If it was the opinion of the legislature or the judiciary of Maine that we ought not to take jurisdiction of the plaintiff's complaint of an unreasonable discrimination made by the defendants against the plaintiff on that part of the road situated in Maine, we should endeavor to give no just cause of offence, and to avoid all jurisdictional conflict. And, if it should be found that we had unwittingly encroached upon the sovereignty of another State, we should make haste to retrace our steps. But, as we understand the law of Maine, we are safe in holding that we may take jurisdiction of the whole of the case presented by the plaintiff, in an action at common law. Undoubtedly, on the question of discrimination practised by the defendants in the performance of their duty in Maine, the rights of the parties are to be determined according to the law of that State. But, with the present system of continuous common carriage among our numerous States, if the remedy were cut in pieces by every State line, in cases of this kind, the evil consequences would be serious, and, as we think, without any legal necessity. Considering this point upon the general doctrine of transitory actions, the generally uniform liability of natural and artificial persons, and the intent of the legislatures of Maine and New Hampshire to create a corporation that might act, and be dealt with, as one and not two, in such matters as those involved in this suit, we see no room for doubt. Angell & Ames on Corporations, secs. 402–407, 4th ed.; *Libbey* v. *Hodgdon*, 9 N. H. 394; *Fuller* v. *C. & N. W. R. R. Co.*, 31 Iowa 187; *Fuller* v. *C. & N. W. R. R. Co.*, 31 Iowa 211.

IV. The defendants contend that the declaration is bad at common law, because it is not alleged that the defendants were common carriers. It is not so alleged in terms; probably it is so alleged in substance.

The objection being one so easily obviated by an amendment alleging, in so many words, that the defendants were common carriers, the plaintiff, having his attention called to a possible motion in arrest of judgment, will undoubtedly guard against danger in that quarter, and avoid an unprofitable and uninteresting question of pleading, by making such an amendment.   This being a case, in some respects, of novel impression in this State, the plaintiff's counsel, in drawing the declaration, very prudently referred to the statute, and inserted several counts of considerable length and elaboration.   Since we hold that damage suffered by the plaintiff from an unreasonable discrimination made by the defendants between the plaintiff and the Eastern Express Company or any one else, in terms, facilities, or accommodations — damage caused by any undue or unreasonable preference or advantage made or given by the defendants, as common carriers, to or in favor of any particular person or company, or caused by any undue or unreasonable prejudice or disadvantage to which the defendants subjected the plaintiff—is a cause of action at common law, a good and sufficient count can easily be drawn for such a cause of action, without reference to the statute.   It may be well to employ as much of the phraseology of the statute as possible, and it may not be strictly necessary to insert explicit allegations presenting the case in the exact verbal form in which we have presented it, but the declaration should be made obviously and unquestionably sufficient.   The suggestions we have made will enable counsel readily to put it in such form as to avoid every possible objection.   Our time is too much needed for the consideration of subjects of some importance, to be properly occupied with an unnecessary and barren question of pleading.

*Case discharged.*